1
2
3
4       UNITED STATES DISTRICT COURT
5       EASTERN DISTRICT OF CALIFORNIA
6
7   RODERICK WASHINGTON,                1:03-cv-05263-LJO-SMS-PC
8              Plaintiff,               FINDINGS AND RECOMMENDATIONS TO
                                        PROCEED WITH FIRST AMENDMENT
9        v.                             FREEDOM OF SPEECH CLAIM AGAINST
                                        DEFENDANTS EARLY, LAMANCO, AND
10  RICHARD EARLY, et al.,              PASTOR, AND TO DISMISS ALL
                                        REMAINING CLAIMS AND DEFENDANTS
11
              Defendants.               OBJECTIONS, IF ANY, DUE IN THIRTY
12                                      DAYS
                                 /
13

14  **I.      RELEVANT PROCEDURAL HISTORY**

15          Roderick Washington ("plaintiff") is a state prisoner proceeding pro se in this civil rights

16  action filed pursuant to 42 U.S.C. § 1983.  Plaintiff filed the original complaint on March 3, 2003.

17  (Doc. 1.)   On March 21, 2003, the court issued a minute order administratively closing the case

18  pursuant to a pre-filing order which was in effect against plaintiff. (Doc. 6.)  The original complaint

19  was returned to plaintiff.  On April 23, 2003, the District Judge issued an order directing the Clerk

20  to administratively close the case pursuant to the pre-filing order. (Doc. 12.)  Plaintiff appealed the

21  orders closing his case. (Docs. 8, 13.)  The appeals were dismissed by the Ninth Circuit.  (Doc. 19.)

22          On June 5, 2003, plaintiff filed a motion for the court to vacate the judgment and accept

23  payment of the filing fee. (Doc. 22.)  On July 11, 2003, plaintiff paid the filing fee. (Doc. 23.)  On

24  July 21, 2003, the court granted plaintiff's motion and re-opened the case. (Doc. 24.)  Plaintiff

25  resubmitted the original complaint.  (Doc. 1.)

26          On December 8, 2004, the court screened the original complaint and dismissed it for failure

27  to state a claim, with leave to amend. (Doc. 36.)    On December 20, 2004, plaintiff filed the first

28  amended complaint. (Doc. 42.) On March 21, 2006, the court screened the first amended complaint

1  and dismissed it for failure to state a claim, with leave to amend.  (Doc. 60.)  On May 12, 2006,

2  plaintiff filed the second amended complaint.  (Doc. 63.)

3  **II.    SUMMARY OF SECOND AMENDED COMPLAINT**

4         Plaintiff's second amended complaint ("SAC") was filed on May 12, 2006.  (Doc. 63.)

5  Plaintiff names over 75 defendants, all employees of the California Department of Corrections and

6  Rehabilitation ("CDCR") who worked at North Kern State Prison ("NKSP") and Corcoran State

7  Prison ("CSP") where plaintiff was incarcerated during the time of the events at issue.  Plaintiff

8  alleges he arrived at NKSP on July 9, 1999, was transferred to CSP in November 1999, was returned

9  to NKSP on December 2, 2002, and was later transferred back to CSP where he was incarcerated

10  when he commenced this action on March 3, 2003.

11         In the second amended complaint, plaintiff alleges violations of his constitutional rights by

12  defendants based on denial of medical care, retaliation, interference with plaintiff's prison appeals

13  and court cases, denial of a proper hearing, racial and religious discrimination, conspiracy by

14  defendants, misclassification of plaintiff as a mental patient, risk to personal safety, interference with

15  and loss of property, threats, negligent hiring, denial of right to correspond, and use of force.

16         ***Medical***

17         Plaintiff alleges that the events at issue in the second amended complaint began on July 9,

18  1999, when he arrived at NKSP on the bus.  Plaintiff alleges he was experiencing swollen tonsils and

19  neck and back problems.  He was medically screened and although he complained of symptoms, he

20  was denied medical treatment.   Plaintiff alleges he was then subjected to bio-medical

21  experimentation when defendant Gary, a lab tech, injected him with a TB substance which caused

22  him to experience chest, eyes, throat, and tonsilar and stomach problems.  Plaintiff alleges that

23  defendants Makesome and Salvia then ordered him confined to Ad Seg, and for four and a half

24  months he was denied medical care.  Plaintiff alleges he could not hear, eat, touch his head, neck,

25  or any part of his body.  He alleges he could not brace himself against any object, and he was not

26  given any relief or comfort by defendants.  He alleges he suffered from upper respiratory tract

27  symptoms, infection, conjunctivitis, and stool problems.  He alleges he was in severe pain

28  everywhere on his body and head.  He alleges he reported the symptoms, and it was clear he needed

2

emergency medical treatment and that his condition would worsen without it.  Plaintiff alleges that after the four and a half months were over, defendants ordered examinations and prescribed antibiotics and Tylenol for plaintiff.  Plaintiff alleges that after he was transferred to CSP, he was again denied medical treatment.

Plaintiff alleges that defendants deliberately falsified documents about his health, so they could classify him as a mental health patient.  Plaintiff alleges that defendants sought to give him "psychotropic" medications, conspired to medicate him for mental problems, and wrongfully placed him in a mental health setting.

Plaintiff alleges that in 2003, once a week for about six weeks, he submitted sick call requests to defendants Quicho and Wood seeking an appointment with the doctor for problems with his tonsils, stomach, eye and head, to no avail.  When plaintiff asked about the delay in seeing the doctor, defendants Quincho and Chavas told him to keep resubmitting sick call request slips.  Plaintiff alleges he submitted request slips and grievances, but defendants Rhodes, Quicho, Wood, Chavas, Giovanno and Henscel destroyed them.

Plaintiff alleges that after his return to CSP, defendants ignored medical orders from the Los Angeles County Sheriff concerning pneumonia and H. pylori suffered by plaintiff.

Plaintiff alleges he continues to have medical problems.  Plaintiff alleges that he suffers from extreme bladder, stomach, back, chest, eye, head and neck problems and severe pain, as a result of defendants' failure to provide adequate medical treatment.

### *Personal Safety*

Plaintiff alleges that defendants placed him in an extremely cold strip cell without food, clothing, heat, showers, a mattress or blanket, or yard time for 3-4 days, causing him to suffer physical injury and emotional distress.

### *Use of Force*

Plaintiff alleges that on December 30, 2002, he was removed from cell 115 and placed in a holding cell by defendants Cambridge, Chambers, Westpaul, Sands, McDaniel and Gaskins.  He alleges that without warning they punched, pushed, and kicked plaintiff while he was handcuffed.

///

Plaintiff also alleges that defendants Gaskin, Chambers, and Westpaul struck him in the back of the leg and pushed him into a cage, causing a laceration to his forehead.

Plaintiff alleges he was assaulted, sexually abused, and pepper sprayed  He also alleges that defendants intentionally and wantonly struck, kicked, stomped, punched and administered mace to him.

### Adverse Prison Conditions

Plaintiff makes a variety of allegations against defendants concerning conditions of his confinement.  For example, plaintiff alleges that defendants confiscated or destroyed his mail, withheld his property, destroyed his books, delayed his correspondence, denied him access to the law library, refused to assist him with paperwork, destroyed his appeals, withheld his newspapers, created false and misleading documents about his health, trashed his legal property, sexually abused him, took away his job, stole or switched his clothing, and failed to reimburse him for misplaced funds.

Plaintiff alleges that on December 30, 2002 and January 10, 2003, defendants McDaniel, Stevens, Cambridge, Westpaul, Uddie, Hicks, Lopez and Early placed him naked in an extremely cold strip cell for several days for complaining about medical treatment.  Plaintiff also alleges that defendants deprived him of food, clothing, a mattress, yard time, and showers for 3-4 days.  He also alleges he was handcuffed, hogtied, and placed in restraints for 24 hours.

### Retaliation

Plaintiff alleges that after he filed administrative grievances, he experienced discrimination, property loss, and mail tampering by defendants Tauberman, Day, Truin, Hoyt, Guthrie, and Pastor, because he had complained.  He alleges that defendant Biggs confiscated and destroyed one of his appeals.  Plaintiff alleges that after he filed court cases and grievances concerning staff misconduct, defendants Early, Coleman, Taxdahl, Flores, Lopez and Lomanco withheld his grievances, berated him for allegations he made in his grievances, subjected him to property loss and transfer, and denied him access to the courts.  Plaintiff alleges that defendants' retaliation caused the district courts of California to "shut the door on plaintiff for failure to pay filing fees."  Plaintiff also alleges he was transferred to CSP out of retaliation.

Plaintiff also alleges that defendants tampered with his mail, harassed him, created false write-ups, and denied him access to the law library, yard, showers, food, and funds because he filed filing grievances, small claims actions, and federal and state actions.  Plaintiff also alleges that defendants exposed plaintiff and his family to substantial risk of injury and death out of retaliation.

### Interference with Court Cases

Plaintiff alleges that defendants interfered with his efforts to file and maintain his court cases by confiscating, destroying and misplacing funds, legal property and books, and by interfering with his mail.   Plaintiff alleges that defendants denied him judicial review of the legality of his confinement and conviction by trashing legal mail, withholding and trashing his appeals, and refusing to reimburse him for funds misplaced in 1999.  Plaintiff alleges that his confinement in the SHU denied him of the right to appeal ineffective counsel.  Plaintiff alleges that defendants' actions caused the district courts of California to "shut the door on plaintiff for failure to pay filing fees."

He alleges he was denied access to the law library to make copies, get court forms, and study case law for his habeas case.  He alleges that some of his cases were dismissed because he could not file responses.  Plaintiff alleges that defendants do not help Ad Seg inmates with photocopies, legal assistance, or preparing court forms.

### Discrimination

Plaintiff alleges he was discriminated against because he is a black Muslim and because he protested his mistreatment.  He alleges that blacks are more often placed in the SHU at CSP.  He alleges defendants discriminated against when they placed him in solitary confinement, interfered with his medical treatment, and denied him access to the courts.  Plaintiff alleges that he was also discriminated against for filing grievances about loss of his property against defendants Westpaul and Chamber.

As an example of discrimination, plaintiff alleges that on December 25, 2002, he held his food port open complaining about property, medical, and mail issues and afterward, on December 29, 2002, he was placed in a cell with no lights and an inoperative toilet.  He alleges that also, on December 30, 2002, his legal mail was trashed and torn by defendant Oddies.

///

Plaintiff also alleges he was the only African American forced to submit to a strip cell search and walk out of the cell naked in front of inmates in Ad Seg, even though he had broken no rules.

Plaintiff also alleges that defendants confined him in prison and the SHU because he is Muslim and because he provided legal assistance to other prisoners.  Plaintiff alleges that defendant intentionally discriminated against him by placing him in solitary confinement, mishandling funds, and restricting his right to file appeals.

### No Proper Hearing

Plaintiff alleges that on January 4, 2003, he was served with disciplinary charges for delaying a peace officer.  Plaintiff alleges he requested that the hearing officer call as witnesses the inmates who were housed in a cell across from him in Ad Seg.  Plaintiff alleges that he also asked that defendants Gaskin, Sands, Cambridge, Chambers and Westpaul be called as witnesses.  Plaintiff alleges that his disciplinary hearing was held by an unknown defendant who did not allow witnesses to attend.  Plaintiff alleges that after the hearing, he received a retaliatory transfer to CSP without warning.

### Correspondence with Sister

Plaintiff alleges that defendants Early, Lamanco, and Pastor cut off his correspondence with his sister, Lisa A. Smith, with whom he had corresponded for over 10 years, because plaintiff wrote about prison conditions.  Plaintiff alleges that on January 23, 2003, after she had written complaining of retaliation, she received a letter from defendant Early allowing the correspondence to resume.

### Conspiracy

Plaintiff alleges that defendants conspired to cover up their misconduct by creating false and misleading documents about plaintiff's health.  Plaintiff alleges that defendants Coleman, Taxhdal, Flores, Steeler, Castillo, Bravo, Fleske and Buckely conspired with various other defendants to conceal the true facts and events surrounding their unconscionably violent intentional behavior.  Plaintiff also alleges that defendants Nyguen, Masseburg, Schultz, Rhodes, Markoff, Oliver, Ayson, Makesome, Markoff, Rean and Keith conspired to place plaintiff in mental health facilities, force medication on him, and conceal the fact that he was unlawfully injected with a virus.

///

### *Supervisors and Policies*

Plaintiff alleges that defendants Early, Lopez, Flores, Taxdahl, Lamanco, Stevens, Graham and Truerse authorized and ratified outrageous conduct and wrongful acts by certain other defendants.   Plaintiff alleges that defendants Lamanco, Early, McDaniel, Massburger, Nyguen, Hammon, and others allowed defendants Early and Lamanco to hogtie plaintiff, knowing such conduct would be harmful.

Plaintiff alleges his rights were violated because of the policies, practices and customs of defendants who acted in supervisorial positions.  He alleges there were policies for use of force, strip cell policies, confiscation of property policies, denial of legal mail policies, punishment and intimidation policies, discrimination policies, hiring and personnel policies, and policies to cover up wrongful incidents.   Plaintiff alleges his mistreatment, discrimination, and retaliation were foreseeable results of policies, practices, and customs which were known to be deficient but condoned by officials, supervisory personnel, and policy makers at NKSP.

### *Grievance Process*

Plaintiff alleges that defendants interfered with the grievance process at the prison.   He alleges that he submitted prison appeals describing problems from July 1999 to 2001, and from December 2, 2003 to January 17, 2003, placing defendants on notice of violations concerning handling of mail, but defendants Coleman, Fleske, Tachdal,, Robinson, Lopez, Lomonco, and Early confiscated and destroyed the appeals.   Plaintiff also alleges defendants placed him on Appeal Restriction status at NKSP and he was not allowed to file prison appeals.

### *Personal property*

Plaintiff alleges defendants withheld his mail and newspapers.  He alleges his job was taken away, and defendants forced him to mail his clothing home, then stole or switched his clothing.  Plaintiff also alleges that defendants failed to reimburse him for funds misplaced in 1999.

### *State liberty interests*

Plaintiff alleges that defendants have deprived him of state-created liberty interests by (1) failing to notify plaintiff by way of memorandum, (2) retaliating against him, (3) depriving him of clothing as punishment, and sexual molestation, (4) failing to provide personal safety, (5) destroying,

confiscating and trashing property, (6) denying him procedural due process, (7) tampering with mail, and losing funds, books, and mail, (8) failing to provide medical treatment, and (10) discriminating against him. Plaintiff also alleges that under California Civil Code § 51.7 and 52.2(b), defendants acted and conspired to beat, terrorize and intimidate him because of his race, color, and/or national origin.

### Negligent Hiring

Plaintiff alleges that defendants negligently failed to assign, supervise, or control officers, fostering a code of silence. Plaintiff alleges that defendants Lomanco, Earl, Grannis, Garibay, Woodford, and the CDC negligently employed, retained, supervised, and trained certain correctional officers, medical personnel and doctors, resulting in injury to plaintiff.

### Defamation

Plaintiff alleges defendants defamed him by characterizing him as crazy, harming his reputation and health.

### Injuries & Relief

Plaintiff alleges he suffered grave bodily and emotional injuries, loss of property, and incurred medical expenses. He alleges he has permanent scarring on his heart, chest, liver, stomach, and eyes. As relief, plaintiff seeks compensatory and punitive damages, declaratory and injunctive relief, attorney fees and costs, and trial by jury.

**III.    SCREENING REQUIREMENT**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

///

A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).  In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

## IV.  PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "Section 1983 . . .  creates a cause of action for violations of the federal Constitution and laws."  Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted).  "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress."  Id.

Section 1983 plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person deprives another of a constitutional right, where that person 'does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made.'"  Hydrick v. Hunter, 500 F.3d 978, 988 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  "[T]he 'requisite causal connection can be established not only by some kind of direct, personal participation in the deprivation, but also by setting in motion a series of acts by others which the

actor knows or reasonably should know would cause others to inflict the constitutional injury.'" Id. (quoting Johnson 588 F.2d at 743-44). "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).

## A.    Rule 8(a)

The court has informed plaintiff more than once that in filing a complaint, he needs to comply with Rule 8(a) which requires a short and plain statement of the claim showing plaintiff is entitled to relief.[1]   Rule 8(a) expresses the principle of notice-pleading, whereby the pleader need only give the opposing party fair notice of a claim. Conley, 355 U.S. at 45-46. Rule 8(a) does not require an elaborate recitation of every fact a plaintiff may ultimately rely upon at trial, but only a statement sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Id. at 47.

Plaintiff's second amended complaint is extremely difficult to read, consisting of forty five (45) handwritten pages with two hundred twenty eight (228) separate paragraphs.  Plaintiff names over seventy five (75) defendants and discusses fourteen (14) claims for relief.   Although plaintiff provides headings for each of his fourteen claims for relief, underneath each claim he incorporates all of the preceding paragraphs by reference.  The time frame of these incidents appears to span from 1999 to late 2003, well after the initiation of this action.[2]  Due to the manner in which plaintiff has organized his second amended complaint, the court could not easily determine which facts go with which claims and/or defendants.   In fact, at first reading, it appeared to the court that plaintiff's allegations were insufficient to put any of the defendants on notice of his claims for relief.

---

[1]Plaintiff is well aware of Rule 8(a) but continues to file voluminous documents.  He has filed sixty eight civil cases in this district and has attempted to file many others.  At least three of the filed cases were dismissed under 28 U.S.C. § 1915(2) as frivolous, malicious, or for failure to state a claim upon which relief may be granted. Therefore, under the three strikes provision of § 1915(g), plaintiff is not allowed to bring a civil action without prepayment of the filing fee unless he is under imminent danger of serious physical injury.  28 U.S.C. § 1915(g). Plaintiff is also subject to a pre-filing review order at this court.  The instant action was dismissed on April 23, 2003 (Doc. 12.); however, the court reinstated the action on July 21, 2003 after plaintiff paid the filing fee.  (Doc. 24.)

[2]Exhaustion must occur prior to filing suit.  McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir.2002). Thus, even if plaintiff has since exhausted, the claims based on events occurring after the date the original complaint was filed would be dismissed as the exhaustion did not occur *prior to filing suit.* McKinney, 311 F.3d at 1199-1201.

1    **B.    Eighth Amendment Medical Care**

2    Plaintiff alleges that defendants ignored his requests for medical care, sought to medicate him

3    for mental problems, used him for bio-medical experimentation, and ignored medical orders from

4    the Los Angeles County Sheriff concerning pneumonia and H. pylori suffered by plaintiff.

5    A prisoner's claim of inadequate medical care does not constitute cruel and unusual

6    punishment unless the mistreatment rises to the level of "deliberate indifference to serious medical

7    needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). The "deliberate indifference" standard involves

8    an objective and a subjective prong. First, the alleged deprivation must be, in objective terms,

9    "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501

10   U.S. 294, 298 (1991)). Second, the prison official must act with a "sufficiently culpable state of

11   mind," which entails more than mere negligence, but less than conduct undertaken for the very

12   purpose of causing harm. Farmer, 511 U.S. at 837. A prison official does not act in a deliberately

13   indifferent manner unless the official "knows of and disregards an excessive risk to inmate health

14   or safety." Id.

15   In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's

16   civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere

17   'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."

18   Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), citing Estelle, 429 U.S. at

19   105-06. "[A] complaint that a physician has been negligent in diagnosing or treating a medical

20   condition does not state a valid claim of medical mistreatment under the Eighth Amendment.

21   Medical malpractice does not become a constitutional violation merely because the victim is a

22   prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th

23   Cir. 1995); McGuckin v. Smith, 974 F.2d 1050, 1050 (9th Cir. 1992), overruled on other grounds,

24   WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). Even gross negligence

25   is insufficient to establish deliberate indifference to serious medical needs. See Wood v.

26   Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). A prisoner's mere disagreement with diagnosis

27   or treatment does not support a claim of deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242

28   (9th Cir. 1989).

1      Deliberate indifference can be manifested by prison guards intentionally denying or delaying

2 access to medical care or intentionally interfering with the treatment once prescribed. Estelle, 429

3 U.S. at 104-05.  However, where a prisoner alleges a delay in receiving medical treatment, the

4 prisoner must allege that the delay led to further injury. McGuckin, 974 F.2d at 1060, overruled on

5 other grounds, WMX Techs, 104 F.3d at 1136; Shapely v. Nevada Bd. of State Prison Comm'rs, 766

6 F.2d 404, 407 (9th Cir. 1985).

7      Although neither a physician's negligence nor a prisoner's disagreement with a particular

8 course of treatment states a claim for deliberate indifference, a prison medical staff's acts or

9 omissions will constitute deliberate indifference if staff members knew of and disregarded an

10 excessive risk to an inmate's health.  Farmer, 511 U.S. at 837.  Prison officials are deliberately

11 indifferent to a prisoner's serious medical needs when they "interfere with treatment once

12 prescribed." Estelle, 429 U.S. at 104-05. The Ninth Circuit has found deliberate indifference where

13 prison officials "deliberately ignore the express orders of a prisoner's prior physician for reasons

14 unrelated to the medical needs of the prisoner." Hamilton v. Endell, 981 F.2d 1062, 1066 (9th Cir.

15 1992) (reversing summary judgment where prison officials forced prisoner to endure a plane flight

16 that resulted in ear injury, in direct contravention of a treating physician's previous orders); Ortiz v.

17 City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989) (per curium) (reversing summary judgment

18 where medical staff knew that pretrial detainee had head injury, but prescribed contraindicated

19 medications, disregarding evidence of complications to which they had been specifically alerted by

20 private treating physician); Tolbert v. Eyman, 434 F.2d 625 (9th Cir. 1970) (finding cognizable claim

21 for deliberate indifference where warden refused to authorize prisoner's receipt of medicine that had

22 been previously prescribed by a physician); Cf. McGuckin, 974 F.2d at 1062(where surgery

23 recommended by prisoner's prior physician was severely delayed, court was unable hold doctors

24 liable because prison administrators, not the doctors, were responsible for scheduling treatment).

25      Plaintiff has not alleged sufficient facts against any individual defendant demonstrating the

26 defendant knew of and disregarded an excessive risk to plaintiff's health or safety regarding his

27 medical care.  He also failed to show that a delay in his medical care resulted in further injury.

28 ///

1  Therefore, the court finds that plaintiff fails to state a claim for Eighth Amendment denial of

2  adequate medical care under § 1983 against any of the defendants.

3       **C.      Eighth Amendment Right to Personal Safety**

4       Plaintiff alleges that defendants violated his rights to personal safety when they placed him

5  in an extremely cold strip cell without food, clothing, heat, showers, a mattress or blanket, or yard

6  time for 3-4 days, causing him to suffer physical injury and emotional distress.

7       Prison officials have a duty to take reasonable steps to protect inmates from physical abuse.

8  Hoptowit v. Ray, 682 F.2d at 1250-51; Farmer, 511 U.S. at 833. To establish a violation of this duty,

9  the inmate must establish that prison officials were deliberately indifferent to a substantial risk of

10  serious harm to the inmate's safety. Farmer, 511 U.S. at 834. The deliberate indifference standard

11  involves an objective and a subjective prong. First, the alleged deprivation must be, in objective

12  terms, "sufficiently serious . . . ." Id. at 834 (citing Wilson, 501 U.S. at 298). Second, the prison

13  official must "know[] of and disregard[] an excessive risk to inmate health or safety." Id. at 837.

14       To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison

15  conditions must involve "the wanton and unnecessary infliction of pain . . . ." Rhodes v. Chapman,

16  452 U.S. 337, 347 (1981). Although prison conditions may be restrictive and harsh, prison officials

17  must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety.

18  Id.; Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit, 682 F.2d at 1246. Prison

19  officials have a duty to take reasonable steps to protect inmates from physical abuse. Id. at 1250;

20  Farmer, 511 U.S. at 833. To establish a violation of this duty, the prisoner must establish that prison

21  officials were deliberately indifferent to a substantial risk of serious harm to the inmates's safety.

22  Id. at 834. The deliberate indifference standard involves an objective and a subjective prong. First,

23  the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." Id. (citing Wilson,

24  501 U.S. at 298). Second, the prison official must "know[] of and disregard[] an excessive risk to

25  inmate health or safety." Farmer, 511 U.S. at 837.

26       Plaintiff has not alleged sufficient facts against any individual defendant demonstrating the

27  defendant knew of and disregarded an excessive risk to his safety. Moreover, plaintiff fails to show

28  any connection or link between the actions of any named defendant and the deprivation alleged to

have been suffered by plaintiff.  Therefore, the court finds that plaintiff fails to state a claim for Eighth Amendment deliberate indifference to plaintiff's personal safety under § 1983 against any of the defendants.

### D.   Excessive Force

Plaintiff alleges that defendants used force against him.

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7.  "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response."  Id.  (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it."  Id.

Not "every malevolent touch by a prison guard gives rise to a federal cause of action.  Id. at 9.  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."  Id. (citing Johnson v. Glick, 481 F.2d 1028, 1033 (2nd Cir. 1973) (cert. denied sub nom. Johnson, 414 U.S. 1033 (1973)).  "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'"  Id. at 9-10.

Plaintiff fails to allege facts showing that defendants' used wanton and unnecessary force against him that was not part of a good-faith effort to maintain or restore discipline.  Therefore, the court finds that plaintiff's claim for excessive force under the Eighth Amendment must be dismissed.

### E.   Eighth Amendment Conditions of Confinement

Plaintiff makes a variety of allegations against defendants for conduct resulting in adverse conditions of his confinement.

///

1    To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison

2 conditions must involve "the wanton and unnecessary infliction of pain . . . ." Rhodes, 452 U.S. at

3 347.   Although prison conditions may be restrictive and harsh, prison officials must provide

4 prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Id.; Toussaint,

5 801 F.2d at 1107; Hoptowit, 682 F.2d at 1246.   Where a prisoner alleges injuries stemming from

6 unsafe conditions of confinement, prison officials may be held liable only if they acted with

7 "deliberate indifference to a substantial risk of serious harm." Frost v. Agnos, 152 F.3d 1124, 1128

8 (9th Cir. 1998).

9    The deliberate indifference standard involves an objective and a subjective prong.   First, the

10 alleged deprivation must be, in objective terms, "sufficiently serious . . . ." Farmer, 511 U.S. at 834

11 (citing Wilson, 501 U.S. at 298).   Second, the prison official must "know[] of and disregard[] an

12 excessive risk to inmate health or safety . . . ." Farmer, 511 U.S. at 837.   Thus, a prison official may

13 be held liable under the Eighth Amendment for denying humane conditions of confinement only if

14 he knows that inmates face a substantial risk of harm and disregards that risk by failing to take

15 reasonable measures to abate it. Id. at 837-45.   Prison officials may avoid liability by presenting

16 evidence that they lacked knowledge of the risk, or by presenting evidence of a reasonable, albeit

17 unsuccessful, response to the risk. Id. at 844-45.   Mere negligence on the part of the prison official

18 is not sufficient to establish liability, but rather, the official's conduct must have been wanton. Id.

19 at 835; Frost, 152 F.3d at 1128.

20    "What is necessary to show sufficient harm for purposes of the Cruel and Unusual

21 Punishment Clause depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8

22 (1992).   "The objective component of an Eighth Amendment claim is . . . contextual and responsive

23 to contemporary standards of decency." Id. at 8 (quotations and citations omitted).   "[E]xtreme

24 deprivations are required to make out a[n] [Eighth Amendment] conditions-of-confinement claim."

25 Id. at 9 (citation omitted).   With respect to this type of claim, "[b]ecause routine discomfort is part

26 of the penalty that criminal offenders pay for their offenses against society, only those deprivations

27 denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis

28 of an Eighth Amendment violation." Id. (quotations and citations omitted).   "[E]xtreme deprivations

are required to make out a conditions-of-confinement claim." Id. (internal quotation marks and citations omitted).

"The Eighth Amendment guarantees adequate heating." Keenan, 83 F.3d at 1091. "Inadequate ventilation and air flow violates the Eighth Amendment if it undermines the health of inmates and the sanitation of the penitentiary." Keenan, 83 F.3d at 1090 (internal quotations and citation omitted). Also, the denial of adequate clothing may, under certain circumstances, rise to the level of an Eighth Amendment violation. Walker v. Sumner, 14 F.3d 1415, 1421 (9th Cir. 1994).

Plaintiff fails to allege facts demonstrating that any defendant knew of and disregarded an excessive risk to plaintiff's health or safety. Therefore, the court finds that plaintiff fails to state a cognizable claim for conditions of confinement under the Eighth Amendment against any of the defendants.

### F.    **Retaliation**

Plaintiff alleges that defendants retaliated against him for filing prison grievances and court cases.

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

Plaintiff fails to allege sufficient facts showing that any named defendant performed a specific act because of plaintiff's protected conduct. Moreover plaintiff has not alleged facts demonstrating that his First Amendment rights were chilled as a result of defendants' conduct. In fact, after the alleged retaliation, plaintiff continued to file grievances and proceeded to file the

instant action.  "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights."  Barren, 152 F.3d at 1194. Therefore, the court finds that plaintiff fails to state a cognizable claim against any of the defendants for violation of his constitutional rights under § 1983 because of retaliation.

### G.    Denial of Access to Courts

Plaintiff claims that defendants interfered with his efforts to file and maintain his court cases, causing cases to be dismissed and causing the district courts of California to "shut the door on plaintiff for failure to pay filing fees."

Inmates have a fundamental constitutional right of access to the courts.  Lewis v. Casey, 518 U.S. 343, 346 (1996).  The right of access is merely the right to bring to court a grievance the inmate wishes to present, and is limited to direct criminal appeals, habeas petitions, and civil rights actions. Id. at 354.  The State is not required to enable the inmate to discover grievances or to litigate effectively once in court.  Id.  Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim).  Christopher v. Harbury, 536 U.S. 403, 412-15, 122 S.Ct. 2179, 2185-87 (2002).  To prevail on his claim, plaintiff must show that he suffered an actual injury by being shut out of court.  Id. at 415; Lewis, 518 at 351.

Inmates do not have the right to a law library or legal assistance.  Id. at 351.  Law libraries and legal assistance programs are only the means of ensuring access to the courts.  Id.  Because inmates do not have "an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense."  Id.  Rather, an inmate claiming interference with or denial of access to the courts must show that he suffered an actual injury.  Id.

With regard to plaintiff's allegations of denial of legal assistance, he fails to state a claim that defendants violated any of his constitutional rights.  With regard to plaintiff's allegations of interference with his court cases, plaintiff fails to allege facts showing that any named defendant performed an act which violated his right to bring to court a direct criminal appeal, habeas petition, or civil rights action.  Plaintiff's statement that defendants caused the district courts of California to

"shut the door" on him is conclusory.  "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." Barren, 152 F.3d at 1194.  Therefore, the court finds that plaintiff fails to state a cognizable claim for denial of access to the courts under § 1983 against any of the defendants.

**H.     Equal Protection/Discrimination**

Plaintiff alleges that defendants intentionally discriminated against him because of his race and religion, because of his activities as a Muslim and jailhouse lawyer, because he complained about his mistreatment, and because he filed prison grievances.

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985).  An equal protection claim may be established in two ways.   First, a plaintiff establishes an equal protection claim by showing that the defendant has intentionally discriminated on the basis of the plaintiff's membership in a protected class. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir.2001).  Under this theory of equal protection, the plaintiff must show that the defendants' actions were a result of the plaintiff's membership in a suspect class, such as race.   Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005).

If the action in question does not involve a suspect classification, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose.  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); San Antonio School District v. Rodriguez, 411 U.S. 1 (1972); Squaw Valley Development Co. v. Goldberg, 375 F.3d 936, 944 (9th Cir. 2004); SeaRiver Mar. Fin. Holdings, Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir. 2002). To state an equal protection claim under this theory, a plaintiff must allege that:  (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. Village of Willowbrook, 528 U.S. at 564.  If an equal protection claim is based upon the defendant's selective enforcement of a valid law or rule, a plaintiff must show that the selective enforcement is based upon an "impermissible motive." Squaw Valley,  375 F.3d at 944; Freeman v. City of Santa Ana, 68 F.3d 1180, 1187 (9th Cir.1995).

Plaintiff fails to allege any facts showing that defendants intentionally treated him differently as a result of his race or religion.  Plaintiff also fails to allege facts showing that defendants intentionally treated him differently, under the circumstances, than prisoners who were not African-American, Muslim, jailhouse lawyers, complaining, or filing grievances.  Also, plaintiff has not shown that defendants' conduct toward him was irrational.  Moreover, plaintiff fails to show any connection or link between the actions or omissions of any named defendant and the deprivation alleged to have been suffered by plaintiff.  Therefore, the court finds that plaintiff fails to state a cognizable claim for violation of his rights under the Equal Protection Clause.

## I.    Due Process

Plaintiff alleges that defendants transferred him to CSP without a proper hearing.

The Due Process Clause protects against the deprivation of liberty without due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to invoke the protection of the Due Process Clause, a plaintiff must first establish the existence of a liberty interest for which the protection is sought.  Liberty interests may arise from the Due Process Clause itself or from state law.  Wilkinson v. Austin, 125 S.Ct. 2384, 2393 (2005).  The Due Process Clause itself does not confer on inmates a liberty interest in avoiding "more adverse conditions of confinement."  Id.; Hewitt v. Helms, 459 U.S. 460, 466-68 (1983).  Under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation.  Sandin v. Conner, 515 U.S. 472, 481-84 (1995).  Such interests are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Id. at 484.  Prison inmates do not have a constitutional right to be incarcerated at a particular correctional facility or to be transferred from one facility to another. Meachum v. Fano, 427 U.S. 215, 224-25 (1976).  Nor do prisoners have a liberty interest in prison transfers.  See Olim v. Wakinekona, 461 U.S. 238, 249, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983)

Plaintiff has alleged no facts that establish the existence of a liberty interest entitling him to procedural due process.  Therefore, plaintiff fails to state a claim upon which relief may be granted based on a violation of the Due Process Clause.

///

1    **J.    First Amendment**

2    In the second amended complaint at page 21, paragraphs 82 and 83, plaintiff alleges that

3    defendants prohibited him from corresponding with his sister because he wrote to her about prison

4    conditions.

5    In resolving challenges to restrictions on prisoners' speech freedoms, their rights must be

6    balanced against the interests of the state in the confinement of prisoners in order to deter crime and

7    in the operation of the prison system. O'Connell v. Southworth,422 F.Supp. 182 (D.R.I. 1976). "[A]

8    prison inmate retains those First Amendment rights that are not inconsistent with his status as a

9    prisoner or with the legitimate penological objectives of the corrections system.  Thus challenges to

10    prison restrictions that are asserted to prohibit First Amendment interests must be analyzed in terms

11    of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner

12    has been committed in accordance with due process of law." Pepperling v. Crist, 678 F.2d 787, 790

13    (9th Cir. 1982) (citing Pell v. Procunier, 417 U.S. 817, 822 (1974)).

14    "Censorship of prisoners' mail, therefore, may be justified where the regulation or practice in

15    question furthers one of these important or substantial governmental interests and is unrelated to the

16    suppression of expression." Id at 791. (citing Procunier v. Martinez, 416 U.S. 396, 413 (1974)).  But

17    the limitation must be no greater than necessary to protect the governmental interest involved.  Id.

18    The court finds that plaintiff states a cognizable claim for relief under the First Amendment

19    for violation of his rights to freedom of speech under § 1983 against defendants Early, Lamanco, and

20    Pastor.  The parties are here advised that the First Amendment claim found cognizable is limited to

21    plaintiff's allegations in the second amended complaint at page 21, paragraphs 82 and 83.

22    **K.    Conspiracy**

23    Plaintiff claims that defendants conspired to conceal facts about their misconduct, misstate

24    plaintiff's health record, place him in mental health facilities, medicate him, and conceal the fact that

25    he was unlawfully injected with a virus.

26    A conspiracy claim brought under section 1983 requires proof of "''an agreement or meeting

27    of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001)

28    (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir.

1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (*quoting* Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (*quoting* United Steel Workers, 865 F.2d at 1541).

Plaintiff does not provide any factual information showing that any defendant had an agreement with another defendant to act in a way that would violate plaintiff's constitutional rights. Therefore, the court finds that plaintiff fails to state a claim for conspiracy under § 1983.

### L.      Supervisory Liability

Plaintiff alleges that defendants in supervisorial positions authorized and ratified wrongful acts by other defendants.  He also alleges that defendants were responsible for policies, practices and customs at the prison which caused violation of his rights.

Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979).  To state a claim for relief under section 1983 based on a theory of supervisory liability, plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Although federal pleading standards are broad, some facts must be alleged to support claims under section 1983. See Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 168 (1993).

Plaintiff has not alleged any facts indicating that defendants personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them;

or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen, 885 F.2d at 646. Therefore, the court finds that plaintiff fails to state a claim for supervisory liability of defendants.

## M.   Violations of Grievance Process

Plaintiff alleges that defendants interfered with the grievance process at the prison, confiscated and destroyed appeals, and denied him the right to file appeals.

There is no constitutional right to an inmate appeals process. The Ninth Circuit has held that prisoners do not have a "separate constitutional entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003), citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). The non-existence of, or the failure of prison officials to properly implement, an administrative appeals process within the prison system does not raise constitutional concerns. Id. See also, Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993); Flick v. Alba, 932 F.2d 728 (8th Cir. 1991); Azeez v. DeRobertis, 568 F.Supp. 8, 10 (N.D.Ill. 1982) ("[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment"). Id.; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986). Actions in reviewing prisoner's administrative appeal cannot serve as the basis for liability under a § 1983 action. Buckley, 997 F.2d at 495.

Defendants' actions in responding to plaintiff's appeal, alone, cannot give rise to any claims for relief under section 1983. Accordingly, plaintiff fails to state a claim against any of the defendants upon which relief may be granted under section 1983 for improperly responding to his appeals.

## N.   Interference with Personal Property

Plaintiff alleges that defendants stole, withheld, or otherwise interfered with his personal property.

With respect to plaintiff's property allegation, in order to constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and

unnecessary infliction of pain." <u>Rhodes</u>, 452 U.S. 337, 347 (1981).  The confiscation of personal property, however, does not give rise to a claim for relief for violation of the Eighth Amendment, regardless of the value of the property to the inmate.    Accordingly, plaintiff's allegation is insufficient to give rise to a cognizable Eighth Amendment claim.

### O.     Threats

Plaintiff alleges that defendants threatened and harassed him.  However, verbal harassment or abuse alone is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983, <u>Oltarzewski v. Ruggiero</u>, 830 F.2d 136, 139 (9th Cir. 1987), and threats do not rise to the level of a constitutional violation. <u>Gaut v. Sunn</u>, 810 F.2d 923, 925 (9th Cir. 1987).  Therefore, any claims of mere verbal threats or harassment must be dismissed.

### P.     State Liberty Interests

Plaintiff sets forth numerous allegations that defendants have deprived him of state-created liberty interests.  As in many of the assertions plaintiff has made above, plaintiff does not provide any factual information regarding his allegations.   Similarly, plaintiff fails to link any of the named defendants to any act or omission that resulted in the alleged deprivation.  Accordingly, none of the assertions made regarding state liberty interests are sufficient to give rise to a cognizable claim for relief for purposes of section 1983.

### Q.     California Common Law Battery

Plaintiff alleges that defendants intentionally and wantonly struck, kicked, stomped, punched and administered mace to plaintiff.

Under California law, "[a]n assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another" and "[a] battery is any willful and unlawful use of force or violence upon the person of another."  Cal. Penal Code § 240, 242 (West 1999); 5 B. E. Witkin, Summary of California Law, Torts § 346 (9th ed. 1988).

Plaintiff has alleged no specific facts showing that defendants used force or violence against him unlawfully.   Moreover, plaintiff has not linked any of the named defendants to any act or omission that resulted in a violation of his rights.  Therefore, the court finds that plaintiff's claim for battery must be dismissed.

1      **R.      Negligent Hiring**

2      Plaintiff alleges that some of the defendants acting in supervisory positions negligently

3  employed, retained, supervised, and trained certain correctional officers, medical personnel and

4  doctors, causing plaintiff to suffer injuries.

5      "California case law recognizes the theory that an employer can be liable to a third person

6  for negligently hiring, supervising, or retaining an unfit employee." Doe v. Capital Cities, 50

7  Cal.App.4th 1038, 1054 (Cal. Ct. App. 1996).  "[T]he cornerstone of a negligent hiring theory is the

8  risk that the employee will act in a certain way and the employee does act that way." Id. at 1055.

9      Plaintiff has alleged no specific facts showing that any of the defendants "knew or should

10 have known that hiring" the "certain correctional officers, medical personnel, and doctors" "created

11 a particular risk or hazard and that particular harm materialized." Id. at 1054.  Accordingly, the court

12 finds that plaintiff fails to state a claim for relief under a negligent hiring theory.

13     **S.      Defamation**

14     Plaintiff alleges that some of the defendants defamed him by falsely and publicly

15 characterizing him as crazy, injuring his reputation and health.

16     "Defamation is an invasion of the interest in reputation." Gilbert v. Sykes, 147 Cal.App.4th

17 13, 27, 53 Cal.Rptr.3d 752, 764 (2007) (internal quotations and citation omitted).  Under California

18 law, "[t]he tort of defamation involves (a) a publication that is (b) false, (c) defamatory, and (d)

19 unprivileged, and that (e) has a natural tendency to injure or causes special damages." Taus v.

20 Loftus, 40 Cal.4th 683, 720, 151 P.3d 1185, 1209 (2007) (internal quotations and citation omitted).

21 Reputation alone does not implicate any "liberty" or "property" interests sufficient to invoke the

22 procedural protection of the due process clause, and something more than simple defamation by a

23 state official must be involved to establish a claim under § 1983.  Paul v. Davis, 424 U.S. 693, 701

24 (1976).

25     Plaintiff fails to allege sufficient facts in support of his allegations showing that defendants

26 used defamatory language and published it to someone other than the plaintiff who would understand

27 it to be defamatory.  Plaintiff also fails to provide factual information about the nature of the injuries

28 to his reputation and health that resulted from the defamation.  Moreover, plaintiff has not linked any

1  named defendant with an affirmative act or omission that demonstrates a violation of plaintiff's

2  rights.  Therefore, the court finds that plaintiff fails to state a cognizable claim for defamation.

3  **IV.     CONCLUSION**

4          The court finds that plaintiff's allegations give rise to a cognizable claim for relief under

5  section 1983 against defendants Early, Lamanco, and Pastor, for violation of plaintiff's rights to

6  freedom of speech under the First Amendment.  This First Amendment claim is limited to plaintiff's

7  allegations in the second amended complaint at page 21, paragraphs 82 and 83.

8          The court also finds that plaintiff's allegations do not give rise to any other claims for relief.

9  Moreover, in light of the fact that the court has previously provided plaintiff with two opportunities

10  to amend the complaint, the court finds that plaintiff is unable to cure the deficiencies in the

11  complaint and should not be granted further leave to amend.

12          Accordingly, it is HEREBY RECOMMENDED that:

13      1.      This action proceed only against defendants Early, Lamanco, and Pastor, on

14              plaintiff's First Amendment freedom of speech claim, entirely found in the second

15              amended complaint at page 21, paragraphs 82 and 83; and that this First Amendment

16              claim is the only claim found cognizable by the court;

17      2.      All other defendants in the second amended complaint be dismissed for plaintiff's

18              failure to state any claims against them upon which relief may be granted; and

19      3.      All other claims in the second amended complaint be dismissed for failure to state

20              a claim upon which relief may be granted.

21          These Findings and Recommendations will be submitted to the United States District Judge

22  assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30)

23  days after being served with these Findings and Recommendations, plaintiff may file written

24  objections with the court.  The document should be captioned "Objections to Magistrate Judge's

25  ///

26  ///

27  ///

28  ///

1   Findings and Recommendations."   Plaintiff is advised that failure to file objections within the

2   specified time may waive the right to appeal the District Court's order.   Martinez v. Ylst, 951 F.2d

3   1153 (9th Cir. 1991).

4   IT IS SO ORDERED.

5   **Dated:     March 24, 2008**                    /s/ Sandra M. Snyder
                                                UNITED STATES MAGISTRATE JUDGE